■ In the Matter of FRANK DiDOMENICO, Deceased. MARIA MAIORANO, Respondent; LYDIA T. DiDOMENICO et al., Appellants. [956 NYS2d 122]—

The decedent, Frank DiDomenico, died on April 18, 2008, survived by his three children (hereinafter collectively the objectants). Prior to his admission to the hospital on April 7, 2008, the decedent was living at his home in Briarcliff Manor, with his companion, the petitioner, Maria Maiorano, with whom he had lived since 1995, or nearly the last 14 years of his life.

The petitioner propounded a will for probate dated April 14, 2008 (hereinafter the Will), which appointed her the executor of the estate and granted her the right to reside in the decedent's house for a reasonable time until it was sold, at which time the petitioner was to receive $300,000 from the proceeds of sale and the unpaid principal and interest owed to her on a loan which she made to the decedent in 2005, which was secured by a mortgage. The Will also contained two bequests in the sum of $100,000 to each of the decedent's two grandsons, to pay for college expenses, and divided the residuary estate among the objectants in three equal shares. The estate had an approximate value of $1,050,000, consisting of personal property valued at $300,000 and improved real property valued at $750,000.

The decedent executed the Will at the Westchester Medical Center one week after he was admitted there for shortness of breath. The decedent's niece called an attorney who had previously represented the decedent in connection with a real estate transaction and the aforementioned loan and requested that she come to the hospital so the decedent could make his will. An attending nurse, the petitioner, the decedent's daughter Michelle DiDomenico Ryan, and the decedent's two brothers were all present when the decedent told his attorney the manner in which he wanted to dispose of his estate. After drafting the Will at her office, the attorney-drafter returned to the hospital on the same day to supervise the execution ceremony, in which, inter alia, the Will was witnessed by the decedent's attending nurse and his longtime friend in the presence of two of the objectants.

The objectants filed joint objections to the Will, alleging, inter alia, that the Will was the product of fraud and undue influence exercised by the petitioner. The petitioner moved for summary judgment dismissing the objections, which the objectants opposed. In an order dated June 27, 2011, the Surrogate's Court awarded summary judgment dismissing each of the objections to probate, and admitted the Will to probate by a decree dated July 13, 2011. The objectants now appeal.

An objectant contesting the admission of a propounded instrument to probate based on the alleged exercise of undue influence must show that "the influence exercised amounted to a moral coercion, which restrained independent action and destroyed free agency, or which, by importunity which could not be resisted, constrained the testator to do that which was against his free will and desire, but which he was unable to refuse or too weak to resist" (*Matter of Zirinsky*, 43 AD3d 946, 947-948 [2007] [internal quotation marks omitted]; *see Matter of Walther*, 6 NY2d 49, 53 [1959]; *Matter of Capuano*, 93 AD3d 666, 667-668 [2012]; *Matter of Engelhardt*, 88 AD3d 997, 998 [2011]; *Matter of Eastman*, 63 AD3d 738, 740 [2009]).

The petitioner established her prima facie entitlement to judgment as a matter of law dismissing the objection alleging that the Will was the product of undue influence with the affidavits of the attorney-drafter and the decedent's longtime friend, and the "self-proving" affidavits executed by the decedent's friend and his attending nurse, which were annexed to the Will, and which demonstrated, inter alia, that the decedent understood the terms of the Will as he made them, and that the Will was not the product of undue influence (*see Matter of Capuano*, 93 AD3d at 668; *Matter of Engelhardt*, 88 AD3d at 998; *Matter of Eastman*, 63 AD3d at 740; *Matter of Zirinsky*, 43 AD3d at 947).

While the decedent was seriously ill during the last week of his life, the affidavits of the attorney-drafter, the decedent's longtime friend, and the attending nurse at the hospital, none of whom had an interest in the decedent's estate, established that the decedent was alert, understood that he was dictating the disposition of his assets to the attorney-drafter, and was acting independently when he executed the Will, which bequeathed the decedent's estate to the petitioner and his children and grandchildren, as the natural objects of his bounty.

In opposition, the objectants failed to raise a triable issue of fact (*see generally Zuckerman v City of New York*, 49 NY2d 557 [1980]), based on allegations which were conclusory and speculative, and failed to provide any evidence whatsoever to establish that the petitioner actually exercised undue influence over the

decedent (*see Matter of Marin*, 82 AD3d 982, 983 [2011]; *Matter of Eastman*, 63 AD3d at 740; *Matter of Dubin*, 54 AD3d 945, 946-947 [2008]; *Matter of Bustanoby*, 262 AD2d 407, 408 [1999]). Further, even if a confidential relationship existed between the decedent and the petitioner, based on the petitioner's caring for the decedent during his illness, such relationship is counterbalanced by the close, "family-like" relationship which the petitioner and the decedent enjoyed for the nearly 14 years in which they lived together, until the time of the decedent's death (*cf. Matter of Anella*, 88 AD3d 993, 995 [2011]; *Matter of Scher*, 74 AD3d 827, 828 [2010]; *Matter of Zirinsky*, 43 AD3d at 948).

Accordingly, the Surrogate's Court properly granted that branch of the petitioner's motion which was for summary judgment dismissing the objection to probate alleging undue influence, and admitted the Will to probate.

The objectants' remaining contention is not properly before this Court. Skelos, J.P., Angiolillo, Dickerson and Hall, JJ., concur.